MINNIE L. RHYNO *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.    March 27, 1917. — May 25, 1917.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Negligence,* Street railway, In crowded street.

In an action by a woman for personal injuries sustained from being struck by a street railway car of the defendant when the plaintiff had been thrust upon the track by a surging crowd who were trying to avoid being run over by a large wagon, there was evidence that teams were lined up on either side of the street along the sidewalk, that there were seventy-five or one hundred persons crowded in the centre of the street along both sides of the track, that the crowd was moving, pushing and surging while waiting for the car to stop, that the plaintiff was pushed forward toward the track upon which the car was coming by the crowd at her back, who sought to escape from the large wagon that was being driven along where they had been standing, that the plaintiff, when pushed forward, put up her hand and screamed to the motorman, then from eighteen to twenty feet away, that the car kept coming at the same speed and hit the plaintiff with the fender or side of the car, throwing her between the wheels of the wagon, that the car was going at the rate of four or five miles an hour and did not lessen its speed until the accident had happened. There was evidence that the crowded condition of this street, with teams lined up on both sides, and the rush to board the car were the usual condition of things at this hour of the day, and that the motorman saw the situation of the plaintiff in time to have avoided the accident. *Held,* that it was a question of fact for the jury whether the motorman in the exercise of reasonable care could assume that the plaintiff was far enough away from the track not to be struck by the car.

TORT for personal injuries sustained by the plaintiff on October 13, 1914, from being run into by a street railway car of the defendant as more fully described in the opinion. Writ dated November 16, 1914.

In the Superior Court the case was tried before *Hitchcock,* J. The evidence is described in the opinion. The judge submitted the case to the jury, who reported a disagreement. The judge then ordered a verdict for the defendant; and the plaintiff alleged exceptions.

*C. J. Muldoon, Jr.,* (*J. J. O'Hare* with him,) for the plaintiff.

*E. P. Saltonstall,* (*R. S. Pattee* with him,) for the defendant.

PIERCE, J.    This is an action of tort for personal injuries received by the plaintiff at 5:45 on the evening of October 13, 1914, while she was waiting for a car of the defendant on Harrison Avenue Extension at the rear of the store of W. and A. Bacon Company in Boston. The judge ordered a verdict for the defendant.

The defendant does not question that the plaintiff was in the exercise of due care, and consequently the only issue is whether there is any evidence of the negligence of the defendant, its agents and servants in permitting the car to strike the plaintiff. Harrison Avenue Extension from curb to curb is a trifle over thirty-two feet wide. On this extension the defendant maintains two tracks of the standard gauge of four feet eight and one half inches, with a space between the inner rails of the two tracks of four feet and six inches. The space between the curb on the westerly side and the nearest rail is about nine feet; the space between the curb on the easterly side and the nearest rail is about nine feet. Cars come into the extension from Essex Street on the easterly track, and after they reach a point thirty-three feet from the Essex Street sidewalk they take a switch by which they go over to the westerly track and proceed one hundred and nine feet farther to the end of that track, where they change ends and return from whence they came; the easterly track north of the switch is used only in case of emergency.

The evidence was in some respects conflicting as to other conditions, but the jury reasonably could find that at the time of the accident teams were lined up on either side of the street along the sidewalk; that there were seventy-five or one hundred people crowded in the centre of the street along both sides of the track; that that crowd was moving, pushing and surging while waiting for the car to stop; that the plaintiff, standing with others on the unused track, was pushed forward toward the track upon which the car was coming by the crowd at her back, which sought escape from a large wagon driven toward those standing in the middle of the unused car track, in such a way that as it travelled along the team occupied both rails of the dead track; that the plaintiff as she was pushed forward put up her hand and screamed

to the motorman, then eighteen to twenty feet away; that the car kept coming at the same speed, hit the plaintiff with the fender or side of the car, and threw her between the wheels of the team.

As to the happening of the accident a witness testified, "we looked down and the car was coming and I raised my hand to stop, for I had nowhere to run, and the motorman did not see me, or was looking in some other direction, and kept on going; when he reached my side he struck down Mrs. Rhyno first and I fell after her and the car kept going fully three or four yards after it threw us."

As to the operation of the car the motorman testified that when he was about fifteen feet from the switch he noticed the group of young ladies and the team moving down on his right; that he knew there was "a considerable number of people right in the middle of the street;" that he could go through a crowd, going a foot or two, stop, and go a foot or two more, and that he could stop the car by shutting off the power within less than two or three feet if the car was going four or five miles an hour.

There was testimony to warrant a finding that the car passed the switch at the rate of four or five miles an hour and did not slow down until the accident happened.   There was evidence that the crowded condition of this street with teams lined up on both sides, and the rush to board the car were the usual condition of things at this hour of the day.   The jury could find that the motorman saw the situation of the plaintiff and her peril in season to have avoided the accident.

It was therefore a question of fact whether the motorman in the exercise of reasonable care could assume that the plaintiff was far enough away from the track not to be struck by the car.

*Exceptions sustained.*