C. Elmer Coulter, Appellee, v. American Employers'
Insurance Company, Appellant.

Gen. No. 10,219.

Opinion filed March 9,
1948. Released for publication March 30, 1948.

WILLARD B. GASKINS and ROBERT E. HUNT, both of
Peoria, for appellant.

MORGAN, PENDARVIS & MORGAN, of Peoria, for appel-
lee; CLIFFORD E. SCHNEIDER, of Peoria, of counsel.

MR. JUSTICE DOVE delivered the opinion of the court.
C. Elmer Coulter recovered a judgment against
American Employers' Insurance Company, a corpo-
ration, for $1,250 and the record is before this court
for review upon an appeal by the defendant.

There is no dispute as to the facts. Appellant issued to appellee for a consideration of $75.15 its standard automobile combination policy effective February 8, 1945. This policy expired February 8, 1946, and by its provisions appellant agreed to pay on behalf of the insured, all sums which the insured should become obligated to pay by reason of the liability imposed on him by law for damages because of injury caused by accident and arising out of the ownership, mainte- nance or use of appellee's trucks and agreed to defend in his name and behalf any suit against the insured alleging such injury and seeking damages on account thereof within the policy coverage, even if such suit is groundless. The policy limited the bodily injury of appellant to $10,000 for each person and $20,000 for each accident and the property damage liability to $5,000 for each accident. The policy insured appellee's three trucks and Item 1 stated that the occupation of the insured was garbage collector and the policy re- cited that the purpose for which these automobiles were used were commercial. The policy also contained these provisions, *viz:*

"Purposes of use defined.

(a) The term 'Pleasure and Business' is defined as personal pleasure, family and business use.

(b) The term 'Commercial' is defined as use princi- pally in the business occupation of the named insured as stated in Item 1, including occasional use for per- sonal pleasure, family and other business purposes.

(c) Use of the automobile for the purposes stated includes the loading and unloading thereof."

At the time this policy was issued the insured was engaged in the business of hauling garbage, ashes and refuse, doing business under the name of "Peoria Garbage Disposal Company." The insured entered into a contract with the Saratoga Restaurant and

Cigar Store to haul its garbage and waste and did so every day except Sunday. This restaurant and cigar store is located on Jefferson street in downtown Peoria. In the sidewalk in front of this restaurant and store and flush with its surface is a single steel trap door about three feet square, hinged on the side toward the building and is opened upwards from below or underneath the sidewalk. Steps lead from the basement to the trap door. Garbage is placed in containers in the basement and removed through the opening in the sidewalk covered by this trap door.

On March 14, 1945, appellee was driving one of the trucks covered by this policy of insurance. He stopped it in front of this restaurant and cigar store. He left the truck, entered the front door of the restaurant, went down the stairs leading from the inside of the building to the basement and there found twelve containers containing garbage. He picked up a bushel basket of refuse and garbage and started to make his first trip up the stairs leading from the basement to this trap door in the sidewalk. He set the basket down on the steps leading to the trap door, braced it with his legs and with his hands opened the trap door.

Paul Stuedler, with a baby in his arms, was walking along the sidewalk near the trap door and when appellee pushed the trap door upwards, Mr. Stuedler tripped and was injured. Thereafter Mr. Stuedler brought suit against appellee and the Saratoga Restaurant and Cigar Store to recover damages for the injuries he sustained. On May 18, 1945, prior to the time suit was brought, appellee's attorneys advised appellant of this claim by Mr. Stuedler, requesting appellant to make an investigation and advised appellant that appellee would give the company his full co-operation. No reply was received to this letter and on May 28, 1945, counsel for appellee again wrote the company and on July 6, 1945, the day after summons in the Stuedler suit was served on appellee, his attorneys

wrote appellant enclosing a copy of the summons and requested appellant to undertake the defense of said suit. No reply was received to this letter and on July 23, 1945, counsel for appellee again wrote appellant and the following day appellee was advised by appellant that the Stuedler accident was not covered by its policy under the loading and unloading provision, and for that reason disclaimed any liability.

The Stuedler suit was settled for $2,000, appellee paying one-half thereof and the Saratoga Company paying one-half. In addition to this $1,000 which appellee paid Stuedler, he paid $250 attorney fees to his counsel and the instant action was brought to recover these amounts, aggregating $1,250.

It is contended by counsel for appellant that the accident to Stuedler was outside the scope of the coverage of this insurance contract and counsel argue that the loading and unloading clause in this policy is merely an extension of the use of the truck, and that in order to bring this accident within the scope of this provision of the policy, there must be some connection shown between the accident and the use of the vehicle insured. Counsel cite *Ferry v. Protective Indemnity Co. of New York,* 155 Pa. Super. Ct. 266, 38 A. (2d) 493; *Stammer v. Kitzmiller,* 226 Wis. 348, 276 N. W. 629; *Caron v. American Motorist Ins. Co. of Chicago,* 227 Mass. 156, 178 N. E. 286; *St. Paul Mercury Indemnity Co. v. Standard Accident Ins. Co.,* 216 Minn. 103, 11 N. W. (2d) 794; *John Alt Furniture Co. v. Maryland Casualty Co.,* 88 F. (2d) 36; *American Casualty Co. v. Fisher,* 195 Ga. 136, 23 S. E. (2d) 395 and numerous other cases.

The instant policy covers liability for accidents arising out of the ownership and use of the truck which appellee had driven and parked in front of the Saratoga Restaurant. The insurance contract defined the word "use" to include the loading of that truck.

Counsel for appellant concede that loading this truck covers the movement of the garbage to be loaded from its last resting place into the body of the truck but insist that there must be some connection between the accident to Mr. Stuedler and the use of the insured truck and call our attention to *Ferry v. Protective Indemnity Co. of New York,* 155 Pa. Super. Ct. 266, 38 A. (2d) 493. In that case it appeared that the driver of the insured truck parked it in the street in front of the building which he entered by the front entrance and went to the basement and picked up a can of ashes and carried it to the steps leading to the sidewalk directly beneath the cellar door opening into the basement from the sidewalk. When he came to the steps, carrying the can of ashes, he placed the can on the steps in front of him and drew the bolt from the cellar door, causing a pedestrian to trip and fall, as a result of which she was injured. The truck driver had intended to place the ashes in his parked truck. The court held that the insured was not engaged in loading his truck within the meaning of the policy provision and in the course of its opinion said: "The loading and unloading clause is only an extension of the ownership, maintenance and use clause in the policy. To bring the accident within the loading and unloading clause of the policy, there must be a connection between the accident and the use of the vehicle insured. The vehicle must be directly connected with the work of loading or it must have been an active factor in operation. (See *Wheeler v. London Guarantee and Accident Co.,* 292 Pa. 156, 140 A. 835.) The precise line at which the loading of a truck begins or unloading ends may in some cases be difficult of ascertainment. But in the present case neither the ashes, nor the container in which they were carried nor the insured truck was the cause of, or involved in, the accident. The instrumentality that caused the accident was the cellar door. This was

merely a convenience preparatory to loading, and was not, under the facts, included in the process of loading the truck. See *Stammer v. Kitzmiller*, 226 Wis. 348, 276 N. W. 629.''

*Stammer v. Kitzmiller*, 226 Wis. 348, 276 N. W. 629, cited and relied upon by the court in the *Ferry* case, *supra* is strongly relied upon by appellant. In that case the driver of the insured truck parked near the curb in front of a tavern, opened a hatchway in the sidewalk and delivered a barrel of beer through this hatchway into the basement of the tavern. He neglected to close the hatchway and while he was engaged in having a sales slip for the beer signed in the tavern, the plaintiff fell in the open hatchway left unguarded by the driver of the truck. In reversing the judgment of the lower court and holding the insurer not liable the court stated that while the open hatchway may have been a convenience in the process of further delivery of the goods, it was not included in the process of unloading the truck.

In our opinion the *Stammer* case is not authority for the conclusion reached in the *Ferry* case and the facts in the *Stammer* case are clearly distinguishable from the facts in the instant case. In the *Stammer* case the unloading had been completed. The barrel of beer had reached its final destination in the basement of the tavern and the hatchway in the sidewalk had been left open and unguarded while the driver was in the tavern getting a sales slip signed. It is impossible, however, to distinguish the facts in the *Ferry* case from the facts in the instant case but we don't believe the conclusion reached in the *Ferry* case is sound or that it is supported by the weight of authority.

In *State ex rel. Butte Brewing Co. v. District Court of Second Judicial Dist. in and for Silver Bow County*, 110 Mont. 250, 100 P. (2d) 932, it appeared that on May 3, 1938, the Butte Brewing Company was engaged in delivering a barrel of beer into the base-

ment of a place known as "Cliffords" in the city of Butte. On the day in question the beer had been taken from the truck of the Brewery Company and placed on the sidewalk. An employee of the Brewery Company lifted one of the iron doors of the hatchway in the sidewalk from underneath preparatory to lowering the beer into the cellar. The door was lifted just as Richard T. McCulloh was walking along the sidewalk and was about to step upon the iron door and, as a result thereof, McCulloh was injured. The policy of insurance issued by the Standard Accident Insurance Company contained provisions almost identical with the provisions in the instant policy. The court recognized that the authorities were in conflict and cited many of the cases relied upon by counsel in this case. In concluding that the Insurance Company was liable the court said: "We hold that under the facts here presented the unloading of the truck was a continuous operation from the time the truck came to a stop and the transportation ceased until the barrel of beer was delivered to the customer. The unloading of the truck cannot be said to have been accomplished when the barrel of beer was placed upon the sidewalk. As well might it be argued that the loading of the truck consisted merely of the act of lifting commodities from the ground to the body of the truck. The loading of the truck would contemplate much more than that. It would embrace the entire process of moving the commodities from their accustomed place of storage or the place from which they were being delivered until they had been placed on the truck. So, too, the unloading thereof embraced the continuous act of placing the commodities where they were intended to be actually delivered by use of the truck. This being so, the insurance company policy has application."

In *Bobier v. National Casualty Co.*, 143 Ohio St. 215, 54 N. E. (2d) 798, the plaintiff, doing business as Federal Appliance Service Company, brought suit

for indemnity under the provisions of an automobile indemnity insurance policy issued by the National Casualty Company. The policy there under consideration contains substantially the same provisions with reference to coverage and conditions as the policy in the instant case. The facts were that plaintiff's employees were carrying a stove from a store, preparatory to placing it on the insured truck. In so doing, they negligently damaged some furniture in the store. In order to avoid suit the plaintiff paid the damages and then brought suit for reimbursement. The court referred to and followed *State ex rel. Butte Brewing Co. v. District Court, supra,* stated that it was a leading case upon this subject and said that they were not unmindful of decisions which seem to hold to the contrary citing *Stammer v. Kitzmiller, supra; Zurich General Accident & Liability Ins. Co. v. American Mut. Liability Ins. Co.,* 118 N. J. L. 317, 192 Atl. 387 and *Jackson Floor Covering v. Maryland Casualty Co.,* 117 N. J. L. 401, 189 Atl. 84. In concluding that the loss was covered by the policy the court stated that it was unnecessary to discuss the foregoing cases at length, as they were distinguishable from the instant case either in their facts or in the form of the contract. In the course of its opinion the court said: ''From a consideration of the entire policy it seems clear that it was the intention of the parties to cover liability arising in some instances when the truck was stationary. Unless this be true the provision as to loading or unloading could take place while the truck was in motion. The phrase loading and unloading is the language of National and that phrase is nowhere defined in the policy. It would have been an easy matter to provide what should constitute loading and unloading within the meaning of the policy had National chosen so to do. The policy in that respect is ambiguous and that phrase must be construed most favorably to the plaintiff. It

is often difficult to determine when loading begins and unloading ends. The plaintiff could not fulfill his contract to his customers to deliver and install appliances unless such appliances first were loaded upon the truck at the point of origin and later unloaded and delivered at the point of destination. Delivery and installation were the main purposes of the haul. When then does the loading begin and the unloading cease? We think that the loading begins when the employees of the plaintiff connected with the truck receive the article and as part of a continuing operation place it upon the truck; and that the unloading ceases when the article is taken from the truck by such employees and as part of a continuing operation is delivered to the customer or to the place designated for delivery. This view is consistent with the principles of construction applying to contracts of indemnity and finds support in the following authorities:'' (Citing Montana, Arkansas, Louisiana, Texas, Pennsylvania, Mississippi, Missouri and Federal cases).

In *Pacific Automobile Ins. Co. v. Commercial Casualty Ins. Co. of New York,* 108 Utah 500, 161 P. (2d) 423, 160 A. L. R. 1251 (1945), it appeared that the plaintiff issued a policy of insurance to the Fisher Brewing Company to protect it against liabilities imposed upon it by law for damages sustained on account of the acts of its employees arising out of the ownership or use including the loading and unloading of the trucks of insured. At the time of the accident in question employees of the Brewing Company were delivering beer to a restaurant. They parked at the curb, took the kegs of beer off of the truck and placed them on the sidewalk. One of the employees then went in through the building and opened a manhole or trap door in the sidewalk, through which the kegs of beer were lowered into the basement of the building by means of an elevator. While the beer kegs were being taken into the basement, a blind man, walk-

ing along the sidewalk, fell into the open manhole. The plaintiff insurance company paid this claim against the Brewing Company and then brought the instant suit against the Commercial Casualty Company which had also issued a policy of insurance to the Brewing Company to protect it against liabilities imposed by law except liabilities arising out of the ownership or use or the loading or unloading of the trucks. In holding that the policy of the plaintiff covered the accident in question the Court stated that the phrase "including loading and unloading" is a phrase of extension expanding the phrase "use of the truck" so as to bring within the policy some acts in which the truck does not itself play any part, and deals with the period when the truck itself is at rest, but the goods are being moved onto or off the truck. After reviewing many authorities the court concluded: "To summarize, certain general rules may be stated from the foregoing authorities: 1. The intention of the parties to the insurance contract should be kept constantly in mind by the court in determining the scope of coverage brought within 'loading and unloading' clauses or 'ownership, maintenance and operation' clauses. 2. Loading and unloading include more than mere placing the goods on the truck or removal of the goods from the truck, so that when they are taken directly from the truck, and in one continuous operation carried into the customer's place of business, they are still in the process of being unloaded when set down therein. 3. There must be some causal relationship between the use of the insured vehicle as a vehicle and the accident for which recovery is sought."

Following the report of this case in 160 A. L. R. at pages 1259–1278 inclusive, is an exhaustive annotation upon risks within the loading and unloading clauses in automobile liability insurance policies. Applying the rules enunciated in many of the cases there

cited and referred to we are clearly of the opinion the accident in question is covered by the provisions of the policy which forms the basis of this action.

It is also insisted that the provision in the policy in this case to the effect that in the event suit was brought against the insured, appellant would defend such suit, did not authorize the recovery of attorney fees expended by appellee in the defense of the Stuedler action. In support of this contention counsel cite *Morgan v. New York Casualty Co.*, 54 Ga. App. 620, 188 S. E. 581. We do not think that case supports this contention. In the instant case, when appellant declined to defend appellee when notified of the Stuedler action it breached its insurance contract. The plaintiff expended $250 in defending that action and he is in this proceeding entitled to be reimbursed.

It is finally insisted that it was the duty of appellee to give appellant reasonable notice of the Stuedler accident within a reasonable time thereafter. The provision of the policy is that when an accident occurs written notice shall be given by or on behalf of the insured to the company as soon as practicable. The evidence is that the company did receive written notice the day following the date upon which the summons in the Stuedler suit was served upon appellee. Thereafter appellant advised appellee that it was the opinion of its automobile department that "this particular accident would not be covered in the policy under the loading and unloading coverage." It is a well-settled rule that when one party to a contract refuses to perform and bases its refusal on one ground it waived all other grounds, or is estopped when suit is brought, from setting up other grounds for its refusal. (*Kuska v. Vankat,* 341 Ill. 358, 362.)

The judgment of the circuit court of Peoria county is affirmed.

*Judgment affirmed.*