**LIBERTY MUTUAL INSURANCE COM-PANY, a Corporation, individually and as use benefitee of The Howell Company, a Corporation, Plaintiff-Appellee,**

v.

**HARTFORD ACCIDENT AND INDEM-NITY COMPANY, a Corporation, Defendant-Appellant.**

No. 12129.

United States Court of Appeals
Seventh Circuit.

Feb. 4, 1958.

Rehearing Denied Feb. 27, 1958.

Charles M. Rush, Kirkland, Fleming, Green, Martin & Ellis, Chicago, Ill., for defendant-appellant.

William P. Nolan, Pretzel, Stouffer & Nolan, Chicago, Ill., for appellee.

Before DUFFY, Chief Judge, and HASTINGS and PARKINSON, Circuit Judges.

DUFFY, Chief Judge.

The City of St. Charles, Illinois, maintained a dump which was divided into two areas. In one, burnable trash was to be deposited and the other was reserved for unburnable trash.

On March 28, 1953, an employee of The Howell Company collected on the company's premises, trash and discarded material consisting, in part, of a quantity of lint and several empty or nearly empty 5-gallon cans which had contained lacquer or paint used in the Howell Company's plant. The employee loaded this rubbish into a company truck and drove same to the city dump which was some distance from the Howell Company's premises. By means of a hydraulic lift apparatus which was a part of the truck, the driver unloaded the truck in the section of the dump reserved for rubbish to be burned, and then returned with the truck to the company's premises. Twenty-nine hours later, a blaze in the dump reached the cans causing an explosion which resulted in injury to Dale E. Slaten, a minor, who was walking through the dump.

On the pertinent dates, The Howell Company had in full force and effect two policies of insurance, one issued by Liberty and the other by Hartford. It is agreed that one or the other of the policies covered the risk hereinafter described. This is a suit for a declaratory judgment. The question to be determined here is which policy covered the risk.

The Howell Company was insured under a general liability policy issued by Liberty which provided coverage for bodily injury sustained by any person and caused by accident. However, the policy expressly excluded coverage for bodily injury arising from the loading and unloading of an automobile away from the premises of the company.

The Howell Company also was insured under an automobile liability policy issued by Hartford, which provided coverage for injuries and accidents arising out of the "ownership, maintenance or use of any automobile." In the policy, "Use" is defined to include the "loading and unloading" of insured automobiles. It is agreed that the company truck used in unloading the cans at the dump was covered generally by Hartford's policy.

An action for damages against The Howell Company was commenced in a State Court upon behalf of Dale E. Slaten. Hartford refused to defend the suit. Liberty then began the defense with a reservation as to its rights. The action was settled for $6,000.00 after consultation between representatives of Hartford and Liberty.

The case at bar was tried in the District Court upon a stipulation of facts. That Court held the negligent act which bore a causal relationship to the injury was the unloading of empty or nearly empty paint or lacquer cans in a burning

dump.[1] The Court held that Hartford's policy covered the risk.

There is considerable discussion in the briefs as to the "coming to rest" rule and the "complete operation" rule pertaining to the unloading of motor vehicles. The "coming to rest" doctrine limits coverage to the time when the goods come to rest off the vehicle although final delivery may not have then been made. See Stammer v. Kitzmiller, 226 Wis. 348, 276 N.W. 629. According to the "complete operation" rule, the unloading covers the entire process from the time the goods are received until they have been finally delivered regardless of whether the goods come to rest at any time before final delivery. See 160 A.L.R. 1267.

■■ The decision in the case at bar must be made by the application of Illinois law if it can be ascertained. There are no decisions by the Illinois Supreme Court on the point here in issue. Two Illinois Appellate Court cases have been cited by both parties. In ascertaining applicable Illinois law, we should follow the pertinent decisions of intermediate State Appellate Courts unless we are convinced by other persuasive data that the highest court in the State would decide otherwise. West v. American Telephone and Telegraph Co., 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139. We know of no reason why the Illinois Supreme Court would come to a different conclusion.

The first case cited is Kienstra v. Madison County Mutual Automobile Ins. Co., 316 Ill.App. 238, 44 N.E.2d 944, 945. This case involved the delivery of a cake of ice to a customer's house. Defendant's employee negligently permitted the ice to fall upon a child in the customer's yard. However, this case is not applicable to the issue before us because the court, in its opinion, said: "In our review of the many cases which have been cited by parties in this action, we have been directed to a number of policies which specifically insure the risk of 'loading

and unloading' of trucks. Nothing which we have to say in this case is to be understood as a construction of such policy provisions. * * *"

The other Illinois decision is Coulter v. American Employers' Insurance Co., 333 Ill.App. 631, 78 N.E.2d 131, 132. In that case the insured was engaged in the business of hauling garbage, ashes and refuse. He had a contract with a restaurant in Peoria to haul away its garbage. In the sidewalk in front of the restaurant was located a steel trap door which opened upwards from below the sidewalk. Garbage was customarily removed from the restaurant basement through this opening in the sidewalk to a truck operated by the insured. On the day of the accident, insured lifted the trap door preparatory to bringing up a basket of garbage. A pedestrian on the sidewalk tripped on the door and was injured. The insurance policy contained a provision "(c) Use of the automobile for the purposes stated includes the loading and unloading thereof." The insurance carrier argued that the loading and unloading clause in the policy was merely an extension in the use of the truck and for the accident to be within the scope of this provision, there must be shown some connection between the accident and the insured vehicle.

The Court, in Coulter, quoted extensively and apparently with approval from In re State ex rel. Butte Brewing Co. v. District Court of Second Judicial District, 110 Mont. 250, 100 P.2d 932, 934; Bobier v. National Casualty Company, 143 Ohio St. 215, 54 N.E.2d 798, and Pacific Automobile Insurance Company v. Commercial Casualty Insurance Company of New York, 108 Utah 500, 161 P.2d 423, 424, 160 A.L.R. 1251. The Court said, 78 N.E.2d at page 136: " * * * Applying the rules enunciated in many of the cases there cited and referred to we are clearly of the opinion the accident in question is covered by the provisions of the policy which forms the

---

1. There was nothing in the stipulation that specified or admitted the dump was burning at the time the truck was unloaded. There was, however, attached to the stipulation, a copy of the com-

plaint in the Slaten case in the State Court, which pleading did contain an allegation that the dump was burning when the truck was unloaded.

basis of this action." In other words, the Illinois court construed the loading of the motor vehicle provision to cover preparatory work prior to the actual placing of the load on the trucks. It reached its conclusion, at least in part, by referring to and relying upon cases where the unloading provision was in issue and where it was held that the unloading provision in the policy included not only the period while the load was being removed from the truck, but continued until the product was actually delivered at the end of the contemplated operation. The Court further stated that the facts in the Stammer case (226 Wis. 348, 276 N.W. 629) are clearly distinguishable from the facts in the Coulter case. The Court said, 78 N.E.2d at page 134: "In the Stammer case the unloading had been completed. The barrel of beer had reached its final destination in the basement of the tavern and the hatchway in the sidewalk had been left open and unguarded while the driver was in the tavern getting a sales slip signed. * * *"

In the instant case there is no doubt that the cans should have been placed in that part of the dump reserved for unburnable trash. Also, it is admitted that the truck was unloaded by its own mechanism and no other hoist, crane or apparatus was utilized. Liberty argues that these facts alone are sufficient to establish that Slaten's injuries resulted from the use of the truck and the unloading of same.

■■ As indicated hereinbefore, the complete operation rule as pertains to unloading a vehicle covers the entire process from the time the goods are received until they have been finally delivered, regardless of whether the goods have come to rest at any time prior to final delivery. We think a correct interpretation of the Coulter case is that such rule is presently the law of Illinois. But that rule would have to be extended further in order to sustain the judgment entered below. The cans had been finally and completely delivered. No further action as to the cans was contemplated. The truck had returned to The Howell Company's premises. Even under the broadest interpretation, the unloading of the truck had been completed.

We think significance must be attached to the distinction which the Court made in Coulter to the case of Stammer v. Kitzmiller, supra. The Court pointed out that in Stammer a barrel of beer had reached its final destination in the basement of the tavern. The delivery had been completed. So, in the case at bar there was a complete and final delivery of the cans to the dump.

There is nothing in the Coulter opinion which would authorize us to extend the rule there announced. Whether an accident occurs nineteen hours or nineteen days or a year after a truck has been unloaded and the cargo carried therein has reached its final destination, we cannot say that Illinois courts would hold the accident was caused by the use of or the unloading of the truck. We decline to extend the present rule. If that is to be done, the Illinois courts must do so.

The judgment of the District Court is reversed with instructions that the judgment declare that the policy issued by Liberty covered the risk in question.

Reversed.