**HARTFORD ACCIDENT & INDEMNITY COMPANY, Plaintiff-Appellee,**

v.

**FIREMAN'S FUND INDEMNITY COMPANY, Defendant-Appellant.**

**No. 13473.**

United States Court of Appeals Seventh Circuit.

Jan. 11, 1962.

Rehearing Denied Feb. 26, 1962.

---

William J. McKenna, Norton Wasserman, Jacobs & McKenna, Chicago, Ill., for appellant.

Charles M. Rush, Chicago, Ill., Bernard E. Harrold, Thomas R. Ewald, of Kirkland, Ellis, Hodson, Chaffetz & Masters, Chicago, Ill., for appellee.

Before HASTINGS, Chief Judge, and DUFFY and SCHNACKENBERG, Circuit Judges.

HASTINGS, Chief Judge.

This action was brought by Hartford Accident & Indemnity Company (Hartford), plaintiff-appellee, against Fireman's Fund Indemnity Company (Fireman's Fund),[1] defendant-appellant. Hartford sought reimbursement of funds paid out because of certain damage claims and a declaratory judgment to declare the obligations of the two insurance companies on their respective policies. Jurisdiction was based on diversity of citizenship.

This case was tried to the court without the intervention of a jury. The facts are undisputed and were stipulated by the parties. On consideration of the stipulation, exhibits and briefs, the district court entered findings of fact and conclusions of law favorable to Hartford and judgment against Fireman's Fund in the amount of $23,650. This appeal followed.

Fireman's Fund charges error by the trial court in its conclusions of law, declaring the obligations of the parties under their respective insurance policies.

The undisputed stipulated facts surrounding the accident in question are set out in certain findings of fact, as follows:

"6. On October 15, 1956, and before that, Vernon Olson was employed by Rural Gas Service, Inc., as a driver. On that date he was given an order to deliver a one hundred pound tank of propane gas to a person named Elmer Dickens, 1621 McDaniels Avenue, Evanston, Illinois. He drove one of Rural Gas Service, Inc.'s trucks to that address to make the delivery. There were two buildings on the lot at 1621 McDaniels Avenue on October 15, 1956. The front building was a one-story house. Olson took a tank of propane gas from the truck and moved it to the south side of the one-story house at 1621 McDaniels Avenue, Evanston, where he observed two tanks already connected to this house. In

---

1. The actual defendant is National Surety Corporation, incorrectly sued herein as Fireman's Fund Indemnity Company.

preparing to install the tank which he just unloaded, he lifted the tank on the right hand side and discovered that it was filled. He noted that the tank on the right hand side was turned off. He turned the valve on that tank to the 'on' position and then went to find the party to inform them that they were not out of gas, but that they had not turned on the tank. He went to the front of the house, but no one was home. He went around to the rear of the house and saw a woman coming in from the back where she had been doing her wash. He told her that the gas tank was filled and she stated that she had not ordered gas. Vernon Olson asked the woman if her name was Dickens, and she told him that the person named Elmer Dickens lived in the converted garage which was the second building on the lot.

"7. Vernon Olson then returned to the two tanks attached to the first house, picked up the cylinder he was delivering from the ground where he had previously laid it and rolled this cylinder to the converted garage, which was the second building on the lot. At this second building he switched the tanks, obtained a receipt from Mrs. Elmer Dickens for $8.50 and went on his way. He did not turn off the gas on the south side of the one-story frame building at the front of the lot, and in fact, did not realize at that time that this gas was going into an empty basement. The two tanks, one of which Vernon Olson had turned on at the front of the house, led into a basement apartment where at one time these two tanks were connected to a gas range. This gas range had been removed from this location and the gas turned off from the outside at the two tanks. There were no turn off switches on the pipe which led into the basement apartment from these two tanks, nor was this pipe that led into the basement from these two tanks on the outside of the house ever capped after the range was moved. After Olson left 1621 McDaniels Avenue, Evanston, he arrived at home about noon for lunch.

"8. At about 3:30 P.M. there was an explosion at 1621 McDaniels Avenue, Evanston, in the building toward the front where Vernon Olson had turned on the propane gas tank."

On and before October 15, 1956, Hartford insured Rural Gas Service, Inc., under a contract of automobile liability insurance covering Rural's truck driven by Olson in delivering the tank of propane gas.

Hartford's automobile policy provided coverage for injuries caused by accident and arising out of the ownership, maintenance or use of the automobile. Use of the automobile was defined to include the loading and unloading thereof. By endorsement, the words "caused by accident" were deleted, and the words "resulting from an occurrence" were substituted in lieu thereof. Occurrence was defined as a continuous or repeated exposure to accidentally caused conditions which result in injury. Another policy endorsement provided that the policy would not apply to accidents arising out of the erroneous delivery of liquid products under certain conditions.

On or before October 15, 1956, Fireman's Fund insured Rural Gas Service, Inc., under a contract of general public liability insurance. This policy covered Rural's general operations described as "Liquefied Petroleum Gas Distributing —including installation, servicing and repair [of] liquefied petroleum gas systems, piping and customers' equipment with or without filling of containers." The policy expressly covered "blasting or explosion hazards."

The Fireman's Fund general liability policy excludes coverage with respect to the ownership, maintenance, operation, use, loading or unloading of automobiles if the accident occurs away from the premises of the insured company.

Hartford protected Rural's interests by payment of claims made as a result of the occurrence on October 15, 1956 for a total of $23,650, which Fireman's Fund agrees was a reasonable settlement.

The trial court concluded that "the above-described explosion did not arise out of the ownership, maintenance, operation, use, loading or unloading of the truck, within the terms and meaning of" Hartford's policy, and that Hartford was not obligated under its policy to pay the sum paid in settlement of the claims against Rural. It further concluded that Fireman's Fund "was obligated under its general public liability policy" to pay such claims for which Rural was liable, and ordered reimbursement.

The sole issue before us is whether the district court erred in concluding that the policy of Fireman's Fund covered the injuries and damage resulting from the explosion.

Fireman's Fund concedes that in order to prevail in this appeal it must first be found and determined as a matter of law that the negligent act of Olson in turning on the gas leading to the empty basement of the front building, resulting in the explosion, arose out of the "loading and unloading" of Rural's truck within the terms of Hartford's coverage.

Fireman's Fund assumes throughout its argument that the negligent act of Olson, the resulting explosion or the combination of both as one continuous occurrence was in fact a "part of the unloading" process required to effect a delivery or was "ultimately bound up with the operation of the truck." We do not agree.

Olson's turning the valve had nothing to do with unloading the truck. His assigned use of the truck was to deliver a tank of propane gas to Elmer Dickens who lived in another house. His negligent act was not a part of the delivery of the tank to Dickens. It had no relation to or connection with unloading and delivery. Neither the tank nor the truck, including its equipment, was used by Olson in the commission of his negligent act. In mistakenly turning on the valve, Olson did something independent of and entirely removed from his use of the truck for the business purpose of his trip to the premises in question.

The mere fact that the negligent act occurred before the unloading and delivery were completed is of no consequence where such negligence has no relation to and did not arise out of the use of the motor vehicle as defined within the limits of Hartford's insurance policy provisions.

In this case, as in Liberty Mutual Ins. Co. v. Hartford Accident & Ind. Co., 7 Cir., 251 F.2d 761, 764 (1958), the explosion occurred after the delivery had been completed. In Liberty Mutual, we considered Coulter v. American Employers' Ins. Co., 333 Ill.App. 631, 78 N.E. 2d 131 (1948), and held that the "complete operation rule" was then the law of Illinois. We think this rule is applicable to the case at bar.

Fireman's Fund argues that since our holding in Liberty Mutual, the Illinois Appellate Court has broadened or extended its construction of "loading and unloading" clauses in insurance policies and that the Supreme Court of Illinois would hold that the occurrence here arose out of the unloading of the truck. It relies on Bituminous Cas. Corp. v. American Fidelity, Etc., 22 Ill.App.2d 26, 159 N.E.2d 7 (1959). Bituminous Casualty is readily distinguishable from the instant case. There, the injury occurred while the injured man was taking part in the unloading, while the cargo was being hoisted off the truck, while the truck was at the scene of the accident and before the unloading was completed.

The present case is even stronger on its facts than Liberty Mutual. In the latter, the explosion actually resulted from the articles delivered (paint cans), while here the tank of propane gas delivered to Dickens had no relation to the explosion of the gas in the empty basement of the nearby house.

The trial court did not err in its conclusion that the explosion did not arise out of the use of the truck within the

terms and meaning of the Hartford policy. Further, the facts here bring this case within the complete operation doctrine. This is consistent with our recent decision in Pavlik v. St. Paul Mercury Insurance Company, 7 Cir., 291 F.2d 124 (1961).

In view of the foregoing, we need not consider other arguments advanced by Fireman's Fund.

Since the explosion and the occurrence leading up to it do not come within the "loading and unloading" provisions of Hartford's automobile policy, Fireman's Fund is clearly liable under its general liability policy.

The judgment of the district court is in all respects affirmed.

Affirmed.