**ALLSTATE INSURANCE COMPANY,**
an Illinois corporation, Plaintiff,

v.

**Waldo VALDEZ and Dorothy F. Duffy, Administratrix of the Estate of Henry E. Duffy, Deceased, Defendants.**

**Civ. A. No. 20459.**

United States District Court
E. D. Michigan, S. D.

Feb. 1, 1961.

Albert A. Miller, Garan, Lucow & Miller, Detroit, Mich., for plaintiff.

Robert E. Rutt, Ward, Plunkett & Cooney, Detroit, Mich., for defendant Valdez.

Robert A. Frye, Frye & Frye, Detroit, Mich., for defendant Duffy.

LEVIN, Chief Judge.

The Court has jurisdiction in this declaratory judgment action, 28 U.S.C.A. § 2201, by virtue of the diverse citizenship of the parties and the amount in controversy. The issue presented is whether an accident arising in the manner hereinafter described falls within the language of Allstate Insurance Company's automobile liability insurance policy with defendant Valdez, the insured, obligating Allstate to compensate for bodily injury sustained by any person " * * * arising out of the ownership, maintenance or use, including loading and unloading, of the owned automobile * * *."

Allstate and the defendant Duffy have filed motions for summary judgment under Rule 56, 28 U.S.C.A. The stipulated facts in substance are as follows: On February 25, 1959, Valdez and three friends were hunting for small game. The three other hunters had deposited their weapons in the trunk of Valdez' automobile and were sitting inside the vehicle waiting for Valdez to complete his hunting. The group was then to return to Detroit. Valdez finished hunting and, while standing approximately 25 feet to the rear and south of his car and facing in a generally westerly direction, began ejecting shells from his Browning automatic 12-gauge shotgun. The safety device was on the shotgun. While ejecting the shells, Valdez slipped upon the icy surface of the ground and, in attempting to control his fall, turned his shotgun in the direction of the car. The butt of the gun struck the ground and the weapon discharged, firing a shell which went through the open trunk of Valdez' automobile and killed Henry E. Duffy, one of the hunters sitting in the rear seat of the vehicle.

Thereafter, the defendant Dorothy F. Duffy, as administratrix of the estate of Henry E. Duffy, filed a wrongful death action against Valdez in the Wayne County Circuit Court.[1]

It is generally acknowledged that the "loading and unloading" provision extends liability coverage under a policy beyond the limits circumscribed by the words "maintenance or use." Appleman Insurance Law & Practice, Vol. 7, § 4322 (1942). The courts have adopted two views of the scope of insurance coverage under the "loading and unloading" clause, the so-called "coming to rest" and "complete operation" doctrines. Under the former category, "loading" would cover only the period during which the article has left its place of rest and is in the process of being carried to or placed in the vehicle. Conversely, "un-

---

1. The Supreme Court held in Maryland Casualty Co. v. Pacific Coal & Oil Co., 1941, 312 U.S. 270, 61 S.Ct. 510, 85 L. Ed. 826, that in a declaratory judgment action brought by an insurance company against the insured and the injured third party for a declaration of non-coverage under the policy, the injured third party cannot raise the defense of a lack of "controversy" between himself and the insurer.

loading" terminates when the article is no longer being physically lifted from the vehicle but has actually reached a place of rest. Pacific Automobile Insurance Company v. Commercial Casualty Insurance Company of New York, 1945, 108 Utah 500, 161 P.2d 423, 160 A.L.R. 1251.

■ Broader in scope than the "coming to rest" theory, the "complete operation" interpretation covers the entire process involved in the movement of the article, thereby omitting any distinction between "loading" and preparatory activities or "unloading" and "delivery." Pacific Automobile Insurance Company v. Commercial Casualty Insurance Company of New York, supra.

■ No reported Michigan decision has outlined the scope of coverage under a "loading and unloading" provision. The majority of courts in the United States today follow the "complete operation" doctrine.[2] One reason for the preference of the "complete operation" construction is that it is somewhat more realistic, particularly in policies involving commercial carriers, to regard the entire delivery or preparatory process as an integral part of the "loading" or "unloading" of the vehicle. Without a liberal construction of the "loading and unloading" clause, coverage would be no broader than under the "maintenance or use" provision. Lumbermens Mutual Casualty Company v. Employers' Liability Assurance Corp., 1 Cir., 1958, 252 F.2d 463. In addition, it may be said either that the parties would have intended a liberal construction of the policy or that the phrase "loading and unloading" is ambiguous and must be strictly construed against the insurance company. August A. Busch & Co. of Massachusetts v. Liberty Mutual Insurance Co., 1959, 339 Mass. 239, 158 N.E.2d 351; Raffel v. Travelers Indemnity Co., 1954, 141 Conn. 389, 106 A.2d 716. The adoption by the majority of the courts of the "complete operation" doctrine appears to me to be based upon the better reasoning.

Allstate contends that even under this doctrine the prerequisite of a causal connection between the accident and the "loading" process was not satisfied because Valdez, in ejecting the shotgun shells 25 feet from his automobile, was not making a direct movement towards

2. Since 1946 the "complete operation" construction has been accepted in the following jurisdictions—Connecticut: Raffel v. Travelers Indemnity Co., 1954, 141 Conn. 389, 106 A.2d 716; Illinois: Liberty Mutual Insurance Company v. Hartford Accident and Indemnity Company, 7 Cir., 1958, 251 F.2d 761, reversing on other grounds; Coulter v. American Employers' Insurance Co., 1948, 333 Ill.App. 631, 78 N.E.2d 131; Maryland: American Automobile Insurance Company v. Master Building Supply & Lumber Company, D.C.Md.1959, 179 F.Supp. 699; Massachusetts: August A. Busch & Co. of Massachusetts v. Liberty Mutual Ins. Co., 1959, 339 Mass. 239, 158 N.E.2d 351; Lumbermens Mutual Casualty Company v. Employers' Liability Assurance Corp., 1 Cir., 1958, 252 F.2d 463; New Jersey: Turtletaub v. Hardware Mutual Casualty Co., 1948, 62 A.2d 830, 26 N.J.Misc. 316; New York: Wagman v. American Fidelity & Casualty Co., Inc., 1952, 304 N.Y. 490, 109 N.E.2d 592; Missouri: Maryland Casualty Co. v. Dalton Coal & Material Co., 8 Cir., 1950, 184 F.2d 181, affirming D.C.W.D.Mo.1949, 81 F.Supp.

895; Texas: American Employers' Ins. Co. v. Brock, Tex.Civ.App.1948, 215 S.W. 2d 370; but see also Travelers Insurance Company v. Employers Casualty Company, Tex.Civ.App.1960, 335 S.W. 2d 235; Virginia: London Guarantee & Accident Co. v. C. B. White & Bros. Inc., 1948, 188 Va. 195, 49 S.E.2d 254.

Because of the holdings in Wheeler v. London Guarantee & Accident Co., 1928, 292 Pa. 156, 140 A. 855 and Ferry v. Protective Indemnity Co., 1944, 155 Pa. Super. 266, 38 A.2d 493, Pennsylvania has been considered as accepting the "coming to rest" interpretation. However, in Federal Insurance Company v. Michigan Mutual Liability Company, 3 Cir., 1960, 277 F.2d 442, the Court, in applying Pennsylvania law, stated that there was no clear enunciation of which doctrine the Pennsylvania Court would apply if presented with an appropriate case.

For a classification of cases according to the "coming to rest" and "complete operation" theories decided prior to 1946, see annotation 160 A.L.R. 1259 (1946).

placing the weapon into the trunk of the vehicle.

A Michigan statute, 9 M.S.A. § 13.-1339, Pub.Acts 1957, No. 207, § 312.10, reads:

"It shall be unlawful: * * *

"(d) For any person to transport or have in possession in or upon an automobile * * * a gun or other firearm except a pistol or revolver unless the same be unloaded in both the barrel and magazine; * * *

"(d–1) For any person except as may be otherwise permitted by law, to transport, or have in possession in or upon an automobile any * * gun or other firearm except a pistol or revolver unless the same be taken down or enclosed in a case or carried in the trunk of such automobile;"

██ It would appear that Valdez was fulfilling his legal obligation by ejecting the shells preparatory to placing the weapon in the trunk of his car. As already stated, the other three hunters had deposited their weapons in the trunk of Valdez' car, the trunk lid was up, and the hunters were waiting for Valdez, who would drive them back to Detroit. Under these circumstances where Valdez was ready to "load" his shotgun into the trunk but, as a preparatory step, was attempting to comply with the safety requirements of the Michigan statute, the ejection of the shells was an integral part of the "loading" process, and, therefore, there was a sufficient causal relationship between the "loading" of the automobile and the accident.

█ Allstate claims that the distance from Valdez to his car indicates that the preparatory step in the "loading" process had not occurred. It seems to me that distance *per se* is not necessarily an accurate measuring device of the extent to which "loading" has begun. The test is whether the activities resulting in the injuries are a part of the entire "loading" scheme.

There was a more direct connection between Valdez' "preparatory" steps and the actual placing of the article in his automobile than in the "loading" situations presented in other decisions sustaining coverage under a "complete operation" interpretation. In this regard, two illustrative cases may be mentioned. In Lumbermens Mutual Casualty Company v. Employers' Liability Assurance Corp., 1 Cir., 1958, 252 F.2d 463, a customer was helping a dealer's employees lower a traded-in divan from his second floor porch to the ground by means of a web strap. While doing so, the customer fell off the porch and injured himself. The dealer's truck at the time was parked in the road adjacent to the apartment. Holding that Massachusetts law would construe the "loading and unloading" clause liberally, the Court ruled that there was a sufficient causal relation between the accident and the loading of the vehicle even though, as the dissenting judge pointed out, such an accident, by its very nature, could have happened prior to the trucker's arrival at the customer's residence.

In Wagman v. American Fidelity & Casualty Co., 1952, 304 N.Y. 490, 109 N. E.2d 592, a trucker was employed by a clothing store chain to transport garments from one of its stores to its warehouse. The truck was parked at the curb in front of the store. Two employees of the store rolled a rack of garments to the curb. The truck driver and his helper lifted the articles from the curb and arranged them inside the truck. None of the store's employees entered the truck or brought the garments farther than to the curb. The department manager of the store was on the sidewalk counting and checking the garments but did not participate in the actual movement of the articles. While walking back to the store to examine other goods to be shipped, the manager bumped into a pedestrian causing her to fall. In a declaratory judgment action, the Court held that the trucker's liability policy covered the accident under the "loading" provision, although the actual loading process itself was done only by the trucker's employees and not by the employees of the store,

and the manager's activities could ordinarily be performed inside the store and might well have been undertaken at an earlier time.

These two cases, as well as most other decisions in this area of the law, involve the loading or unloading of commercial vehicles. However, since the "loading and unloading" clause here considered is identical with that found in commercial vehicle liability policies, it may be assumed that Allstate intended uniform construction of the same provision regardless of the type of vehicle involved. In any event, had Allstate wished to restrict the scope of coverage of the "loading and unloading" clause, it was in a position to do so by an express provision in the policy.

I hold for the defendants. An appropriate order may be presented for signature.