BRADLEY TOLER, Plaintiff-Appellee, *v.* COUNTRY MUTUAL INSURANCE COMPANY, Defendant-Appellant.

Fifth District   No. 83—196

Opinion filed April 10, 1984.

Feirich, Schoen, Mager, Green & Associates, of Carbondale (Richard A. Green, Mary Lou Rouhandeh, and Michael F. Dahlen, of counsel), for appellant.

Harris, Lambert & Wilson, of Marion, for appellee.

JUSTICE JONES delivered the opinion of the court:

Plaintiff, Bradley Toler, brought the instant declaratory judgment action to determine whether injuries sustained by him while on a hunting trip with the insured, Randy Lingle, came within the terms of a personal vehicle insurance policy issued to Lingle by the defendant, Country Mutual Insurance Company (Country Mutual). Under this policy Country Mutual was obligated to pay damages caused by accidents "arising out of the *** use, including loading and unloading," of the pickup truck owned by Lingle. The plaintiff was injured as Lingle was unloading ammunition from a rifle before loading it into his truck. The rifle discharged and caused the truck's windshield to shatter, thereby injuring the plaintiff. After a trial upon stipulated facts, the court found that this accident came within the coverage of Lingle's policy and directed Country Mutual to defend Lingle in the personal injury suit filed against him by the plaintiff. We affirm.

The parties' stipulation of facts stated that on December 18, 1976, plaintiff Toler, defendant Lingle and Kelton Greer went coyote hunting in Union County, Illinois, south of Dongola. At sometime between 7 and 8 a.m., the defendant picked up the plaintiff and Greer in his pickup truck and drove to the Charles Brown farm south of Dongola, Illinois. The three men planned to hunt coyotes on the Brown farm and the adjoining farm of Don Fisher. Upon arrival at the Brown farm, the three men got out of the pickup truck of the defendant, took their rifles and began hunting. They later came back to the pickup truck and prepared to leave. Defendant Lingle spotted a coyote, got out of the pickup truck with a Remington rifle owned by Bradley Toler, which he had used on numerous occasions, and went out into the field after the coyote he had spotted. He fired at the coyote and missed it. He then returned to the pickup truck. By the time Lingle got back to the pickup truck, Greer and Toler had unloaded their guns and stored them in the back of the truck. Greer and Toler were in the cab of the pickup truck, with Greer sitting in the passenger seat and Toler sitting in the middle of the seat.

Lingle came back to the truck and opened the door. While standing outside of the truck with the door of the truck open and while in close proximity to the truck, he proceeded to begin unloading the Re-

mington rifle owned by Toler, which had been loaded with .243 caliber shells. These shells were reloads, having been reloaded by Toler. Lingle ejected the empty shell that he had previously fired at the coyote by pulling up on the bolt and pulling it back, causing the shell to be ejected onto the seat of the pickup truck. When he pushed the bolt forward to unload the next shell, the rifle fired. At the time the rifle fired, Lingle was standing outside of the truck holding the rifle in an attempt to unload it. When the rifle fired, the bullet entered the truck through the open driver's door and struck the glass of the windshield. This caused the windshield to shatter and injure the plaintiff.

The plaintiff brought suit against Lingle for his injuries sustained in the accident and subsequently filed the instant declaratory judgment action against Lingle's insurer, Country Mutual. In the complaint against Country Mutual, the plaintiff alleged that Country Mutual had refused to defend Lingle under its insurance policy with him on the basis that the policy did not cover the occurrence in question. The trial court entered judgment against Country Mutual, finding that the policy did apply to the subject occurrence and that Country Mutual had a duty to defend Lingle in the suit against him and to pay any judgment that might be recovered against Lingle by the plaintiff.

On appeal from this judgment Country Mutual contends that the trial court erred in finding that the accident in question came within the coverage of the policy. In pertinent part the policy provided coverage for bodily injury "caused by accident arising out of the ownership, maintenance or use, including loading or unloading" of the insured vehicle. Country Mutual asserts that the accidental discharge of the rifle here did not arise from the use of the truck, or from the loading which is part of its use, because Lingle's act of removing shells from the rifle occurred prior to his loading the rifle into the truck and was not part of the process of loading the truck. Country Mutual contends further that regardless of whether or not the accident occurred during the loading process, the causal relation between the accident and the use of the truck was insufficient to give rise to liability under the policy.

The applicability of the "loading and unloading" clause of a motor vehicle insurance policy to a situation such as that here involved has not been ruled upon by the courts of this State. Courts of other jurisdictions, however, have construed the pertinent policy language in analogous fact situations to hold that coverage exists for injuries resulting from the accidental discharge of firearms being loaded into or unloaded from a vehicle. (See *Laviana v. Shelby Mutual Insurance Co.* (D. Vt. 1963), 224 F. Supp. 563; *Allstate Insurance Co. v. Valdez*

(E.D. Mich. 1961), 190 F. Supp. 893; *Viani v. Aetna Insurance Co.* (1972), 95 Idaho 22, 501 P.2d 706; *Travelers Insurance Co. v. Aetna Casualty & Surety Co.* (Tenn. 1973), 491 S.W.2d 363; *Allstate Insurance Co. v. Truck Insurance Exchange* (1974), 63 Wis. 2d 148, 216 N.W.2d 205; see also *Dorsey v. Fidelity Union Casualty Co.* (Tex. Civ. App. 1932), 52 S.W.2d 775.) The facts of the instant case bring it within the rule of these cases, and we adopt the reasoning there employed to find that coverage exists under the policy in question.

As a general rule an accident, in order to come within the coverage of a "loading and unloading" clause, must have occurred during the process of loading and unloading the vehicle in question and must be causally connected with the act of loading or unloading. (7 Am. Jur. 2d *Automobile Insurance* sec. 208 (1980).) To determine what constitutes loading and unloading under the first part of this test, courts have adopted two basic views: the "coming to rest" doctrine, under which "loading" consists of only the actual lifting and placing of an article into the vehicle, and the "complete operations" doctrine, under which "loading" includes the entire process involved in moving the article. Under the latter doctrine, no distinction is made between loading and acts preparatory to loading. (*Allstate Insurance Co. v. Valdez* (E.D. Mich. 1961), 190 F. Supp. 893; *Travelers Insurance Co. v. Aetna Casualty & Surety Co.* (Tenn. 1973), 491 S.W.2d 363.) The "complete operations" doctrine is generally characterized as the modern view and is supported by the weight of authority. 12 Couch on Insurance sec. 45:128 (2d ed. 1981); see Annot., 6 A.L.R.4th 686 (1981).

In arguing that Lingle's act of removing shells from the rifle here was not part of the process of loading it into the truck, Country Mutual urges this court to apply the narrower "coming to rest" doctrine. We note, however, that Illinois courts have adopted the "complete operations" view in construing "loading and unloading" clauses in a commercial setting. (*Estes Co. v. Employers Mutual Casualty Co.* (1980), 79 Ill. 2d 228, 402 N.E.2d 613; see *Liberty Mutual Insurance Co. v. Hartford Accident & Indemnity Co.* (7th Cir. 1958), 251 F.2d 761; *Coulter v. American Employers' Insurance Co.* (1948), 333 Ill. App. 631, 78 N.E.2d 131.) This construction has not been limited to commercial transactions, and there is no distinction in the policy itself regarding commercial and personal vehicles. (See *Allstate Insurance Co. v. Valdez* (E.D. Mich. 1961), 190 F. Supp. 893; 7 Am. Jur. 2d *Automobile Insurance* sec. 208, at 728-29 (1980).) Moreover, in the instant factual setting, we believe, as did the court in *Allstate Insurance Co. v. Valdez*, that it is the better view to regard the preparatory act of removing shells from the rifle as an integral part

of the loading process.

In *Allstate Insurance Co. v. Valdez* (E.D. Mich. 1961), 190 F. Supp. 893, the insured (Valdez) was ejecting shells from a shotgun preparatory to placing the gun in the trunk of his car when the gun discharged, killing an occupant of the vehicle. The court followed the "complete operations" doctrine and found that this act was part of the loading process, even though Valdez was 25 feet from the vehicle at the time. Noting that, under Michigan statute, the removal of ammunition from a weapon is required before it is transported in a vehicle, the court continued:

> "It would appear that Valdez was fulfilling his legal obligation by ejecting the shells preparatory to placing the weapon in the trunk of his car. *** [T]he other three hunters had deposited their weapons in the trunk of Valdez' car, the trunk lid was up, and the hunters were waiting for Valdez, who would drive them back to Detroit. Under these circumstances where Valdez was ready to 'load' his shotgun into the trunk but, as a preparatory step, was attempting to comply with the safety requirements of the Michigan statute, the ejection of the shells was an integral part of the 'loading' process ***." (190 F. Supp. 893, 896.)

Thus, the court concluded, Valdez' distance from the vehicle at the time of the accident was "not *per se* an accurate measuring device of the extent to which 'loading' [had] begun. The test [was] whether the activities resulting in the injuries [were] a part of the entire 'loading' scheme." 190 F. Supp. 893, 896. *Cf. Laviana v. Shelby Mutual Insurance Co.* (D. Vt. 1963), 224 F. Supp. 563, 565 (insured who was unloading gun in preparation of entering car when car door struck him causing gun to discharge was in the process of "loading" gun into car within meaning of automobile insurance policy. The court noted that unloading the gun was a "safe and customary practice which should be performed before entering a car" and that the insured was "standing near the open door *** in anticipation of entering").

The facts of the instant occurrence present an even stronger case for finding liability under the "loading and unloading" clause than did the facts of *Valdez*. Here it was stipulated that Lingle was standing in close proximity to the truck with the door open as he ejected shells from the rifle onto the seat of the truck. His companions had previously unloaded their guns before storing them in the back of the truck and were waiting in the front seat for Lingle to do the same. It cannot be disputed that the three hunters were preparing to leave and that they were loading their guns into the truck for that purpose. Before physically placing the rifle into the truck, Lingle had to unload

the ammunition from it to comply with statutory requirements (see Ill. Rev. Stat. 1975, ch. 38, par. 24—1 (unlawful to carry loaded firearm in vehicle within corporate limits of city, village or town)) and to conform to sound safety practice. Thus, while the term "loading" in the policy must be given its plain and ordinary meaning (see *Viani v. Aetna Insurance Co.* (1972), 95 Idaho 22, 501 P.2d 706), we believe it can be said that Lingle's act of removing shells from the rifle was an integral part of the process of loading it into the truck so as to come within the coverage of the policy. *Cf. State Farm Mutual Automobile Insurance Co. v. Centennial Insurance Co.* (1975), 14 Wash. App. 541, 544, 543 P.2d 645, 647 (court observed that "the unloading of one's rifle preparatory to entering a vehicle is the kind of *customary* behavior contemplated by the parties to a hunting trip. Thus, it is specifically anticipated behavior and coverage is intended by the parties to an insurance contract" (emphasis in original)).

Our judgment in this regard is not altered by Country Mutual's assertion that such an application of the "complete operations" doctrine could lead to absurd results in other hypothetical cases involving the loading of firearms into a vehicle. As with the application of any doctrine or test, each case must turn upon its particular facts. (*Travelers Insurance Co. v. Aetna Casualty & Surety Co.* (Tenn. 1973), 491 S.W.2d 363.) Despite the hypothetical situations possible, the facts of the instant case control our determination that loading had begun when the accident occurred.

Country Mutual argues additionally that the causal connection between the accident and the insured's use of the vehicle here was insufficient to give rise to liability under the policy. This argument is closely related to the question of whether Lingle's act of removing shells from the rifle came within the loading process, since loading necessarily constitutes a use of the truck (see *Western Casualty & Surety Co. v. Branon* (E.D. Ill. 1979), 463 F. Supp. 1208; *General Accident Fire & Life Assurance Corp. v. Brown* (1962), 35 Ill. App. 2d 43, 181 N.E.2d 191). Country Mutual contends that even if the accident occurred during the loading process, the discharge resulted not from this use of the truck but from Lingle's use of the rifle. Thus, Country Mutual asserts, the accidental discharge could have occurred anywhere and the truck was merely the *situs* of the occurrence. Country Mutual points out further that, unlike in *Laviana v. Shelby Mutual Insurance Co.*, where the front door of the car struck the plaintiff causing his gun to discharge, no part of the truck here came into contact with the rifle and no motion of the truck caused the rifle to discharge.

It is well settled that some causal relation is necessary between an injury and the use of a motor vehicle for there to be coverage under the "arising out of the use" clause of a vehicle insurance policy. Proximate causation in the strict legal sense is not required, however, and the loading or unloading which constitutes the vehicle's use need not be the sole cause of the accident, as "but for" causation is sufficient to satisfy the policy provision. (7 Am. Jur. 2d *Automobile Insurance* sec. 207, at 721-22 (1980); 1 R. Long, Law of Liability Insurance sec. 1.22, at 1—56 through 1—58 (1981); see *Morari v. Atlantic Mutual Fire Insurance Co.* (1970), 105 Ariz. 537, 468 P.2d 564; *Payne v. Southern Guaranty Insurance Co.* (1981), 159 Ga. App. 67, 282 S.E.2d 711.) The use of the vehicle giving rise to liability must be of the vehicle as such (see *Norgaard v. Nodak Mutual Insurance Co.* (N.D. 1972), 201 N.W.2d 871 (no causation where use of vehicle as gun rest for weapon constituted use foreign to vehicle's inherent use)), and no liability will be found where the vehicle was the mere *situs* or location of the accident (see *Cameron Mutual Insurance Co. v. Ward* (Mo. App. 1980), 599 S.W.2d 13 (no causation in cases involving accidental discharge of gun inside vehicle while occupant was handling or toying with gun, as vehicle was mere *situs* of accident and discharge was unconnected with inherent use of vehicle)).

Applying these rules to the instant case, we note initially that under the relevant standard of causation, there is no requirement of any actual physical contact between the vehicle and the instrumentality that was the immediate cause of the injury, here, the rifle held by defendant Lingle. (*McDonald v. Great American Insurance Co.* (D. R.I. 1963), 224 F. Supp. 369; *Payne v. Southern Guaranty Insurance Co.* (1981), 159 Ga. App. 67, 282 S.E.2d 711; *Dorsey v. Fidelity Union Casualty Co.* (Tex. Civ. App. 1932), 52 S.W.2d 775.) Thus, Country Mutual's attempt to distinguish the instant case on its facts from *Laviana v. Shelby Mutual Insurance Co.* is without merit. While the court there observed that "[t]he door of the car was instrumental in producing the accident" (*Laviana v. Shelby Mutual Insurance Co.* (D. Vt. 1963), 224 F. Supp. 563, 565), its decision was based upon a determination that the plaintiff was engaged in the loading process when the accident occurred, and the opinion contained no discussion of the causation factor. Further, unlike those cases in which the actual movement or operation of a vehicle supplied the connecting link between the accident and the use of the vehicle where none would have otherwise existed (see *Cameron Mutual Insurance Co. v. Ward* (Mo. App. 1980), 599 S.W.2d 13 (discussion of cases in which motion of vehicle caused discharge of guns in moving vehicles)), the requisite causal re-

lation is present in the instant case despite the lack of physical contact between the vehicle and Lingle's gun.

Under the facts of the instant case, the insured's vehicle was being used to transport the young men and their weapons on a hunting trip. This was a proper use of the truck and could be expected. (See *Travelers Insurance Co. v. Aetna Casualty & Surety Co.* (Tenn. 1973), 491 S.W.2d 363; *Allstate Insurance Co. v. Truck Insurance Exchange* (1974), 63 Wis. 2d 148, 216 N.W.2d 205; *Dorsey v. Fidelity Union Casualty Co.* (Tex. Civ. App. 1932), 52 S.W.2d 775.) As part of this use it was necessary that the guns be loaded into the truck and that the ammunition be removed from the guns for that purpose. The plaintiff's injury, which occurred during the loading process, was thus connected with the use of the truck as a means of transporting the parties' hunting gear, and this relation was sufficient to give rise to coverage under the relevant policy provision. *Cf. Viani v. Aetna Insurance Co.* (1972), 95 Idaho 22, 501 P.2d 706; *Travelers Insurance Co. v. Aetna Casualty & Surety Co.* (Tenn. 1973), 491 S.W.2d 363; *Allstate Insurance Co. v. Truck Insurance Exchange* (1974), 63 Wis. 2d 148, 216 N.W.2d 205; *Payne v. Southern Guaranty Insurance Co.* (1981), 159 Ga. App. 67, 282 S.E.2d 711; *Dorsey v. Fidelity Union Casualty Co.* (Tex. Civ. App. 1932), 52 S.W.2d 775 (requisite causal relation present where accident occurred during process of loading or unloading guns from vehicle used to transport guns on hunting trip); see also *Morari v. Atlantic Mutual Fire Insurance Co.* (1970), 105 Ariz. 537, 468 P.2d 564.

Because of the relation here between the accident and the use of the insured's truck, the instant case is distinguishable from those cases in which the vehicle involved was the mere *situs* or location of the injury. In *National Union Fire Insurance Co. v. Bruecks* (1966), 179 Neb. 642, 139 N.W.2d 821, cited by Country Mutual, the plaintiff was injured when his companion attempted to unload ammunition from his rifle in a moving vehicle as the two returned home from a hunting trip. The *Bruecks* court found no connection between the rifle's discharge and the use of the vehicle, since there was no more reason to unload the rifle inside the moving vehicle than in another location. The court, however, distinguished that situation from one in which the accidental discharge occurred during the process of loading a firearm into a vehicle, noting that "[e]lementary safety precautions require the unloading of guns before they are transported from one place to another, and such act may constitute a part of the loading *** process." (179 Neb. 642, 651, 139 N.W.2d 821, 828.) Similarly, in the instant case the injury arose out of the process of loading the gun

into the truck, and the truck was more than merely the coincidental place where the accident occurred. *Cf. Western Casualty & Surety Co. v. Branon* (E.D. Ill. 1979), 463 F. Supp. 1208; *Brenner v. Aetna Insurance Co.* (1968), 8 Ariz. App. 272, 445 P.2d 474 (no liability for accidental discharge inside moving vehicle as vehicle was merely fortuitous location of accident); *Mason v. Celina Mutual Insurance Co.* (1967), 161 Colo. 442, 423 P.2d 24; *United States Fidelity & Guaranty Co. v. Western Fire Insurance Co.* (Ky. 1970), 450 S.W.2d 491; *Ramsey v. Continental Insurance Co.* (La. App. 1973), 286 So. 2d 371 (accidental discharge of gun inside vehicle not sufficiently use-connected to give rise to liability under relevant policy provision); *Stonewall Insurance Co. v. Wolfe* (Fla. App. 1979), 372 So. 2d 1147 (no connection between accidental discharge of rifle by boy following vehicle and plaintiff's location on trunk of car).

The case at bar can likewise be distinguished from cases cited by Country Mutual in which coverage was denied because the use of the vehicle giving rise to the injury was not a use of the vehicle as such. In *Hutchins v. Mills* (Fla. App. 1978), 363 So. 2d 818, the plaintiff was shot accidentally by a hunting companion as he stood in the bed of a pickup to gain greater visibility in sighting game. The court held that the use of the truck as a "look-out" did not constitute an inherent use of the vehicle so as to provide a proper basis for liability under the policy. Similarly, in *Watson v. Watson* (Fla. App. 1976), 326 So. 2d 48, the court denied liability for injury resulting from the discharge of a gun being removed from a vehicle following an automobile accident. The court noted that the car had not been used for the primary purpose of carrying the loaded pistol. By contrast, in the instant case the accident arose out of the insured's use of the truck to transport guns on a hunting trip, a proper use from which it could be expected that an accident might occur. See *Lyndoe v. American Standard Insurance Co.* (S.D. 1976), 245 N.W.2d 273.

Country Mutual further cites the case of *Glen Falls Insurance Co. v. Rich* (1975), 49 Cal. App. 3d 390, 122 Cal. Rptr. 696, in which the court held that an injury that arose as much from the use of the firearm involved as from the insured's use of his vehicle did not come within the meaning of a clause of a homeowner's policy excluding coverage for injury "arising out of the use" of a motor vehicle. The rule of that case is inapplicable to the instant case, however, because of the different interpretation given an "arising out of the use" clause in the context of a homeowner's policy. Such exclusionary clauses are interpreted narrowly against the insurer (*State Farm Mutual Automobile Insurance Co. v. Partridge* (1973), 10 Cal. 3d 94, 514 P.2d 123,

109 Cal. Rptr. 811; *Glen Falls Insurance Co. v. Rich* (1975), 49 Cal. App. 3d 390, 122 Cal. Rptr. 696; see *National Family Insurance Co. v. Boyer* (Minn. 1978), 269 N.W.2d 10), and coverage will be denied under the homeowner's policy only if the accident in question arose *solely* from the use of the vehicle. (*Glen Falls Insurance Co. v. Rich* (1975), 49 Cal. App. 3d 390, 122 Cal. Rptr. 696.) As we have seen, the causation requirement for coverage under the "arising out of the use" clause of a vehicle insurance policy is not so strict, and it is not necessary that the use of the vehicle be the sole cause of the accident so long as there is some causal connection between the two.

Finally, in *Aetna Casualty & Surety Co. v. Safeco Insurance Co.* (1980), 103 Cal. App. 3d 694, 163 Cal. Rptr. 219, the court found that coverage was afforded only under a homeowner's policy that excluded coverage for accidents "arising out of the use" of a motor vehicle and not under an automobile insurance policy. The accident in question occurred as the plaintiff and his companions loaded their guns in preparation for target practice while sitting in a parked car. Country Mutual asserts that the situation in *Safeco* is factually analogous to the instant case in that the parties there were loading shells into their guns in preparation for "unloading" them from the vehicle while here they were unloading shells from their rifles in preparation for "loading" them into their truck. There was, however, no discussion in *Safeco* as to whether the accident occurred during the process of unloading the truck. Indeed, the loading of shells into a firearm before exiting from a vehicle cannot be equated with the unloading of shells from a gun before placing it into a vehicle, as the latter is done for the purpose of transporting the guns safely, a proper use of the vehicle, while the former would be done for the purpose of using the gun. Thus, the court's holding in *Safeco* that the accident arose out of the use of the gun rather than the use of the automobile has no effect on the result we have reached here.

For the reasons stated in this opinion, we hereby affirm the judgment of the trial court for the plaintiff and against the defendant Country Mutual.

Affirmed.

WELCH, P.J., and KARNS, J., concur.