PATRICIA WOODSIDE, Plaintiff, v. GERKEN FOOD COMPANY *et al.*, Defendants (Hawkeye-Security Insurance Company, Plaintiff-Appellant, v. United States Fidelity & Guaranty Company *et al.*, Defendants-Appellees).

Fifth District   No. 5—84—0122

Opinion filed January 4, 1985.—Rehearing denied February 1, 1985.

502

John D. Bauman, of Wagner, Bertrand, Bauman & Schmieder, of Belleville, for appellant.

Walker & Williams, P.C., of Belleville (Donald J. Dahlmann and Jeffrey S. Hebrank, of counsel), for appellees.

PRESIDING JUSTICE JONES delivered the opinion of the court:

Plaintiff, Hawkeye-Security Insurance Company (hereinafter Hawkeye-Security), appeals from an order granting the motion of defendant, United States Fidelity & Guaranty Company (hereinafter USF&G), for summary judgment and simultaneously denying plaintiff's motion for summary judgment in a declaratory judgment action to determine which company's insurance policy would furnish primary coverage for an alleged personal injury sustained on the premises of the Hy-Ho Cafe in Belleville. This declaratory judgment action brought by plaintiff, Hawkeye-Security, was consolidated for purposes of discovery with, and arose out of, a personal injury action initiated by Patricia Woodside, an employee of the Hy-Ho Cafe. Various defendants were named in Woodside's complaint, including the Gerken Food Company (hereinafter Gerken), a wholesale food supplier for the cafe and the insured of both parties now before us. Plaintiff, Hawkeye-Security, contends on appeal that the denial of their motion for summary judgment and the granting of defendant's motion was improper because the injury on which we are focusing did not come within the terms of Gerken's motor vehicle liability policy issued by Hawkeye-Security, but rather was encompassed by the provisions of Gerken's general liability policy issued by defendant USF&G. After consideration of both motions for summary judgment, the circuit court held that the injury sustained by Woodside fell within the loading and unloading clause of the policy issued by Hawkeye-Security. We affirm.

The facts are that on the morning of September 26, 1979, Gerken delivered two sacks of potatoes, each weighing 100 pounds, to the Hy-Ho Cafe for use in its restaurant business. An employee for Gerken deposited both sacks inside the doorway entrance of a walk-in storage cooler which was situated adjacent to the kitchen. He departed from Hy-Ho's premises immediately after obtaining a signature on a receipt form. Patricia Woodside, the head cook of the cafe and person responsible for taking deliveries, was unaware at the time that the Gerken delivery had been accomplished.

Woodside had cause to obtain some food supplies from the walk-in storage cooler sometime later that morning. Upon reaching the entrance of the cooler, she encountered the two sacks of potatoes sitting up inside the doorway impeding entry into the walk-in cooler. In an effort to clear the entrance, Woodside dragged one sack of potatoes approximately 12 feet to the rear wall of the cooler where potatoes were ordinarily kept. She returned to the doorway and lifted the second sack into her arms. Upon turning to carry it back

to the rear wall, Woodside slipped and fell, incurring serious injuries to her back, hip and legs. There was evidence that the concrete floor of the cooler was substantially covered with water and, as a result, may have contributed to Woodside's injury. The record further indicates that there was a persistent leak within the cooler.

There was also substantial uncontroverted evidence that the potatoes were to have been delivered to the rear of the walk-in cooler to where Woodside had successfully moved the first sack. More specifically, Woodside, as head cook, had explicitly instructed each Gerken delivery employee to deposit the potatoes against the rear wall of the storage cooler. Each such employee, except one, had had no difficulty in complying with this direction. The nonconforming driver frequently deposited the potatoes in the doorway to the cooler despite Woodside's instructions to discontinue this practice.

On September 24, 1981, Patricia Woodside filed suit against Gerken on the basis of negligence as a result of her injuries. The complaint alleged, *inter alia*, that Gerken had negligently and carelessly placed the sacks of potatoes in the doorway of the cooler, thereby precluding access to the cafe's food supplies and subjecting her to a dangerous condition.

A dispute arose between the two insurers, USF&G and Hawkeye-Security, as to who would furnish primary coverage to Gerken. The plaintiff, Hawkeye-Security, filed a complaint for declaratory relief to resolve the issue whether the comprehensive general liability policy issued by the defendant, USF&G, or the motor vehicle liability policy issued by Hawkeye-Security was to provide coverage for the injuries to Woodside. Resolution of that issue depends entirely on whether the occurrence complained of by Woodside was covered by the "loading and unloading" clause of the motor vehicle policy issued by Hawkeye-Security.

On July 21, 1982, plaintiff filed its motion for summary judgment, which prompted defendant, USF&G, to file a motion for summary judgment on its own behalf. The circuit court granted defendant's motion for summary judgment on October 15, 1982, holding, in effect, that the loading and unloading clause contained in the motor vehicle policy provided coverage to the exclusion of the general liability policy. Plaintiff's motion for reconsideration was subsequently denied, and this appeal followed.

Hawkeye-Security contends on appeal that the circuit court erred in finding that the accident in question came within the coverage of their policy. In pertinent part Hawkeye-Security's motor vehicle policy provided coverage for bodily injury "caused by an occur-

rence and arising out of the ownership, maintenance or use, including loading and unloading" of the insured vehicle. Hawkeye-Security contends that the accident did not arise from the use of the delivery vehicle, or from the unloading which is part of its use, because Woodside's act of moving the potatoes occurred subsequent to their delivery of the potatoes and departure of the vehicle and was, therefore, not part of the unloading process. Hawkeye-Security contends further that the causal relation between the accident and the use of the vehicle was insufficient to give rise to liability under their policy.

To ascertain whether an act constitutes "loading or unloading," the courts have adopted two basic tests: the "coming to rest" doctrine under which "unloading" includes only the actual removing or lifting of the article from the motor vehicle up to the moment when it has actually come to rest, and the "complete operations" doctrine which holds that "unloading" encompasses all of the operations which are required to effect a complete delivery. (*Entz v. Fidelity & Casualty Co.* (1966), 64 Cal. 2d 379, 412 P.2d 382, 50 Cal. Rptr. 190; *Allstate Insurance Co. v. Valdez* (E.D. Mich. 1961), 190 F. Supp, 893.) The "complete operations" doctrine, therefore, covers the entire process involved in moving the goods, while coverage under the "coming to rest" doctrine terminates when the deliveryman has finished his handling of the goods.

Illinois courts have unequivocally adopted the "complete operations" doctrine in construing the coverage of a "loading and unloading" clause contained in a motor vehicle insurance policy. *Estes Co. v. Employers Mutual Casualty Co.* (1980), 79 Ill. 2d 228, 402 N.E.2d 613; see also *Liberty Mutual Insurance Co. v. Hartford Accident & Indemnity Co.* (7th Cir. 1958), 251 F.2d 761; *Coulter v. American Employers' Insurance Co.* (1948), 333 Ill. App. 631, 78 N.E.2d 131.

In *Estes*, the Illinois Supreme Court established that motor vehicle insurance policies containing "loading and unloading" clauses will provide coverage under that clause to the point that unloading has been completed. They held that " 'unloading' has been completed when, subsequent to removal of the material from the vehicle, the deliverer has finished his handling of it, and the material has been placed in the hands of the receiver at the designated reception point, despite the fact that it is necessary to transport the material thereafter to another point." *Estes Co. v. Employers Mutual Casualty Co.* (1980), 79 Ill. 2d 228, 234, 402 N.E.2d 613, 616.

The injury in *Estes* occurred after cement had been delivered by Ready Mixed Concrete Company to the Anderson Construction Com-

pany by pouring the concrete from the truck into a bucket connected to an overhead crane. The bucket and crane were used to transport the concrete to locations where it was to be placed in forms. It had been established that the bucket was the designated reception point for delivery of the concrete. The supreme court in *Estes* relied principally upon this unrebutted fact in holding that the "loading and unloading" clause of the motor vehicle policy did not provide coverage because the injury in question occurred subsequent to delivery of the concrete to the designated reception point.

In the instant case the facts indicate that the sacks of potatoes were to be placed inside the walk-in cooler and against the rear wall. While it is not entirely clear which employee of Gerken delivered to the Hy-Ho Cafe on September 26, 1979, the day in question, we find it unnecessary to address that aspect of this controversy. Each of Gerken's deliverymen had been instructed to place the potatoes inside of and to the rear of the cooler. On the morning that Woodside sustained her injuries, one of those individuals placed the sacks of potatoes in the cooler's doorway. If the rule in *Estes* is followed, such delivery was incomplete regardless of which Gerken deliveryman was involved because it was necessary to "transport the material [potatoes] to another point."

■■ ■ The determination as to when "unloading" has been completed requires an examination of two distinct elements. First, the deliverer must have finished his handling of the material, and, second, it must have been placed in the hands of the receiver at the designated reception point. (*Estes Co. v. Employers Mutual Casualty Co.* (1980), 79 Ill. 2d 228, 402 N.E.2d 613.) The evidence for plaintiff, Hawkeye-Security, satisfies the first element, for Gerken's employee had departed from the Hy-Ho Cafe prior to the accident. Hawkeye-Security, however, fails to satisfy the second requisite element due to the substantial unrebutted evidence in the record that the designated reception point for delivery was against the rear wall of the cooler. Woodside had informed each of Gerken's deliverymen that they were to place the potatoes to the rear of the walk-in cooler. Since the potatoes were not deposited at this designated reception point on September 26, 1979, the delivery by Gerken on that date must be considered incomplete.

■ Hawkeye-Security argues additionally that the causal connection between the accident and the insured's use of the vehicle here was insufficient to give rise to liability under the motor vehicle policy. This argument is closely related to the question whether Woodside's attempt to move the potatoes came within or as part of the unloading

process, since unloading necessarily constitutes a use of Gerken's vehicle. Plaintiff's basis for its contention stems from Woodside's geographic proximity to the delivery vehicle, or more appropriately, her lack thereof. In other words, since Gerken's delivery vehicle had departed from the Hy-Ho Cafe prior to the accident, Hawkeye-Security contends that Woodside's injuries were not sustained as part of Gerken's use of the vehicle.

It is well settled that some causal relation between an injury and the use of a motor vehicle is necessary for there to be coverage under the "arising out of the use" clause of a vehicle insurance policy. Proximate causation in the strict legal sense, however, is not required, and the loading or unloading that constitutes the vehicle's use need not be the sole cause of the accident. It is sufficient that the events giving rise to the claim arose out of the vehicle's use and are related to it. (*Entz v. Fidelity & Casualty Co.* (1966), 64 Cal. 2d 379, 412 P.2d 382, 50 Cal. Rptr. 190; see also 7 Am. Jur. 2d *Automobile Insurance* sec. 207, at 721-22 (1980); 1 R. Long, Law of Liability Insurance sec. 1.22, at 1—57 through 1—58 (1981).) This court in *Toler v. Country Mutual Insurance Co.* (1984), 123 Ill. App. 3d 386, 392, 462 N.E.2d 909, 913, characterized the requisite causation as that which would not have occurred "but for" the improper or incomplete delivery. Geographical proximity of the delivery vehicle to the injured party is, therefore, not the sole determinant of the causation issue. What is determinative is whether the accident in question arose out of the defective delivery or would not have occurred but for that defective delivery, and geographic proximity is but one factor to be considered.

The facts of the instant case reveal that the insured delivered two sacks of potatoes to the Hy-Ho Cafe. The Gerken employee placed the sacks in the doorway of the walk-in storage cooler, thereby impeding entry and exit. Thus, further movement of the potatoes was rendered necessary by the as yet incompleted delivery. When Woodside had cause to obtain supplies from the cooler, she attempted to move the potatoes to the rear of the cooler. It was during this attempt that Woodside sustained her injuries.

■ While the water on the concrete floor of the cooler may have been a contributing factor, it is apparent that Woodside's injuries would not have occurred but for the defective delivery of the insured. Gerken deliverymen had been explicitly instructed to place the potatoes within the cooler to the rear, not in its entrance. Had those instructions been followed, this court would not have had reason to resolve this dispute, for Woodside would not have had to move the potatoes in the first place.

For the reasons stated in this opinion, we hereby affirm the judgment of the circuit court for the defendant and against the plaintiff, Hawkeye-Security.

Affirmed.

KASSERMAN, J., concurring.

JUSTICE KARNS, dissenting:
I believe the majority reads *Estes Co. v. Employers Mutual Casualty Co.* (1980), 79 Ill. 2d 228, 402 N.E.2d 613, too broadly. In holding that the delivery there was a "completed operation," the opinion cannot be considered authority that decidedly different circumstances are not "completed operations." While it is true that Illinois has adopted the "completed operations" doctrine, which requires that the material delivered be placed at a designated reception point, there still must be some causal connection with the placement of the material and the use of the vehicle.

Here the material was placed inside the small cooler, although not at the precise place designated. (In my opinion it is doubtful that this could be considered a "misdelivery.") The driver of the vehicle departed. The immediate cause of plaintiff's fall was water on the floor of the cooler. Perhaps "but for" the placement of the potatoes this accident would not have occurred, but such remote causal relationships have consistently been rejected as a basis of imposing responsibility. (See Prosser, Torts sec. 41, at 239 (4th ed. 1971).) The causal connection of the occurrence with the use of the vehicle is simply too remote. *Entz v. Fidelity & Casualty Co.* (1966), 64 Cal. 2d 379, 412 P.2d 382, 50 Cal. Rptr. 190.

Even though the sacks might be considered misdelivered, they were finally delivered to the control of the consignee. No further movement was necessarily contemplated or required. Other cases have considered such delivery a "completed operation." *Liberty Mutual Insurance Co. v. Hartford Accident & Indemnity Co.* (7th Cir. 1958), 251 F.2d 761; *General Accident, Fire & Life Assurance Corp. v. Liberty Mutual Insurance Co.* (Fla. App. 1972), 260 So. 2d 249.