DOUGLAS D. STUEN *et al.*, Plaintiffs-Appellants, v. AMERICAN STAND-ARD INSURANCE COMPANY OF WISCONSIN *et al.*, Defendants-Appellees.

Second District   No. 2—88—0542

Opinion filed February 7, 1989.—Rehearing denied March 6, 1989.

Lewis B. Kaplan, of Connolly, Oliver, Close & Worden, of Rockford, for appellants.

Robert J. Shaw, of Tuite, Shaw, Gesmer, Finnegan & Tuite, of Rockford, for appellee Illinois Farm Insurance Company.

Alfred W. Cowan, Jr., of Brassfield, Cowan & Howard, of Rockford, for appellee American Standard Insurance Company of Wisconsin.

JUSTICE McLAREN delivered the opinion of the court:

The plaintiffs, Douglas and Pamela Stuen, appeal the trial court's order granting summary judgment in favor of the defendants, American Standard Insurance Company of Wisconsin and Illinois Farmers Insurance Company. On appeal, the plaintiffs contend that the trial court erred in finding that their injuries did not arise out of the use and/or the ownership, maintenance or use of an uninsured motor vehicle. We find no error and affirm the judgment of the trial court. The following facts are pertinent to our review.

On August 2, 1987, Steven and Linda Scheeler drove to Green County, Wisconsin, to enjoy a day of fishing at the Sugar River. They were accompanied by their 1½-year-old dog, Rambo. The Scheelers parked their car off the south side of County Highway EE, and the couple and their dog got out of the car. Linda occupied herself picking up broken glass near the car, and Steven took the dog on a leash to the rear of the car to remove fishing equipment from the trunk. At some point during this act, Steven let go of the dog's leash, and the dog wandered off. Shortly thereafter, both Linda and Steven became aware that the dog was on the north shoulder of the road some distance away from them. They heard and saw several motorcycles approaching the spot where the dog was standing. The dog appeared to move in front of one of the motorcycles, which was ridden by Douglas and Pamela Stuen, the plaintiffs in this matter. The Stuens and the dog collided, which resulted in injuries to both Stuens and in the dog's death. Approximately 10 minutes had passed from the time that the Scheelers arrived at the location to the time of the collision.

The Scheelers had no automobile liability insurance. The Stuens held three such policies: Douglas had two policies with the defendant American Standard Insurance Company of Wisconsin (one for a car, one for the motorcycle), and Pamela had one policy for her car with the defendant Illinois Farmers Insurance Company. The Stuens were Illinois residents, and both insurance companies were licensed to do business in Illinois at the time of the collision.

The Stuens filed a complaint seeking a declaratory ruling that their injuries arose out of the use of an uninsured motor vehicle, thus bringing their injuries within the scope of coverage provided by the uninsured motorist clauses contained in the defendants' insurance policies. The complaint alleged that the plaintiffs' injuries were caused by the Scheelers' negligence in "letting the dog out of or loading the dog into their [uninsured] automobile."

Following the Scheelers' depositions on January 6, 1988, the plaintiffs filed a "motion for summary determination of major issues"

in which the plaintiffs sought to have the court rule that their injuries were covered by the subject insurance policies. Both defendants filed motions in opposition to the plaintiffs' motion.

The policies issued by American Standard to Douglas Stuen contained the following uninsured motorist clause:

"We will pay compensatory damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle. The bodily injury must be sustained by an insured person and must be caused by accident and arise out of the use of the uninsured motor vehicle."

The policy issued by Illinois Farmers to Pamela Stuen contained the following uninsured motorist clause:

"We will pay all sums which an insured person is legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured person. The bodily injury must be caused by accident and arise out of the ownership, maintenance or use of the uninsured motor vehicle."

The trial court heard argument presented by all parties on the various motions and cross-motions for summary judgment on March 31 and April 8, 1988. The trial court denied the plaintiffs' motion and granted the defendants' motions, finding that the collision between the dog and the plaintiffs' motorcycle did not arise out of the use of the uninsured motor vehicle and did not arise out of the ownership, maintenance or use of the uninsured motor vehicle. The plaintiffs filed this timely appeal.

The parties are in agreement on two points: (1) there were no genuine issues of fact before the trial court in its consideration of the motions for summary judgment; and (2) the issue before the court was whether the collision between the Stuens' motorcycle and the Scheelers' dog arose out of the use and/or the ownership, maintenance or use of the Scheelers' uninsured automobile. The plaintiffs correctly state that, in order for coverage to exist under the policies, the court must find some causal relationship between the injuries they sustained and the uninsured motor vehicle. (*Woodside v. Gerken Food Co.* (1985), 130 Ill. App. 3d 501, 507, 474 N.E.2d 771, 775; *Toler v. Country Mutual Insurance Co.* (1984), 123 Ill. App. 3d 386, 392, 462 N.E.2d 909, 913.) The plaintiffs rely upon these cases and upon the fact that Steven Scheeler was in the act of unloading the trunk of his car (the uninsured motor vehicle) when he released the dog's leash, thus allowing the dog to roam freely.

■ If we follow the plaintiffs' reasoning correctly, it would ap-

pear that they are arguing that Steven Scheeler's act of unloading the car is the causal connection between the car (the uninsured motor vehicle) and the plaintiffs' collision with the dog. Assuming *arguendo* that this is so, the plaintiffs' reliance on *Woodside* (130 Ill. App. 3d 501, 474 N.E.2d 771) and *Toler* (123 Ill. App. 3d 386, 462 N.E.2d 909) is quite misplaced, as the insurance policies construed in both of these cases contained "loading and unloading" clauses, *i.e.*, "use" of the automobile was defined to include loading and unloading of the automobile. This is not true of the policies in the case at bar, as none contains a "loading and unloading" clause. In both *Woodside* and *Toler*, it was a foregone conclusion that loading or unloading operations constituted a use of the insured vehicle. The issue faced by both courts was whether the act which resulted in injury constituted loading or unloading. The *Woodside* court stated, "[r]esolution of that issue [coverage] depends entirely on whether the occurrence complained of by Woodside was covered by the 'loading and unloading' clause of the motor vehicle policy." (*Woodside*, 130 Ill. App. 3d at 504, 474 N.E.2d at 773.) The issue we face is whether the collision between the plaintiffs' motorcycle and the uninsured motorist's dog arose out of the use, *et cetera* of the uninsured automobile. Resolution of this issue does not depend upon our interpretation of a "loading and unloading" clause; consequently, we reject the plaintiffs' contention that Steven Scheeler's unloading of his car provides the necessary causal connection between the collision and the uninsured vehicle.

We believe that a situation analogous to the instant matter is presented by the facts of *Kienstra v. Madison County Mutual Automobile Insurance Co.* (1942), 316 Ill. App. 238, 44 N.E.2d 944, in which the insurance policy at issue insured against injuries caused "by reason of the use, ownership, or maintenance" of a delivery truck. (316 Ill. App. at 239, 44 N.E.2d at 944.) In *Kienstra*, a delivery man drove the insured truck to a customer's house in order to deliver a 50-pound cake of ice. He removed the ice from the truck and carried it through the customer's backyard toward the porch, where he dropped it, causing injuries to the customer's three-year-old child. The plaintiff argued that the insurance policy at issue was "broad enough to include 'unloading' operations and that such provisions should be liberally construed" so as to include the injury at issue. (*Kienstra*, 316 Ill. App. at 240, 44 N.E.2d at 945.) The court did not agree and ruled against coverage, stating: "It is difficult indeed to see any causal relationship between the accident and the 'use and operation' of the truck, under [these] facts." (316 Ill. App. at 241, 44

N.E.2d at 945.) The plaintiffs in the instant case contend that *Kienstra* is at odds with the holdings of *Woodside* and *Toler* in that *Kienstra* is a "loading and unloading case," and the court simply ignored the "completed operations" doctrine as enunciated in *Woodside*. Even a cursory reading of *Kienstra* reveals that the plaintiffs' description is incorrect. *Kienstra* is not a "loading and unloading" case, and the court explicitly stated this fact:

> "In our review of the many cases which have been cited by parties in this action, we have been directed to a number of policies which specifically insure the risk of 'loading and unloading' of trucks. *Nothing which we have to say in this case is to be understood as a construction of such policy provisions.*" (Emphasis added.) 316 Ill. App. at 241, 444 N.E.2d at 945.

Our review of the cases cited by the parties in the instant action, as well as all available Illinois law applicable to the facts, leads us to the determination that *Kienstra* controls here. In short, whether the uninsured motorist was engaged in unloading his automobile is irrelevant, as the subject insurance policies do not include loading and unloading operations within their definitions of "use" and "ownership, maintenance, or use."

As an apparent alternative argument, the plaintiffs attempt to analogize the instant facts to those set forth in *Duvigneaud v. Government Employees Insurance Co.* (La. App. 1978), 363 So. 2d 1292, in which an uninsured car owner had a large, playful dog in his car. He parked the car with the windows open, thus allowing the dog to jump out onto the roadway, where it collided with the plaintiff on a motorbike. The plaintiff sought recovery under his uninsured motorist policy, and the Louisiana Appellate Court held for him, employing an elaborate list of tests set forth in *Baudin v. Traders & General Insurance Co.* (La. App. 1967), 201 So. 2d 379, 384-85, to determine whether the plaintiff's injuries arose "out of the use" of the uninsured motor vehicle. We determine that *Duvigneaud* is not persuasive in the case at bar for two equally compelling reasons. First, this case has been constructively overruled by the Louisiana Supreme Court in *Carter v. City Parish Government* (La. 1982), 423 So. 2d 1080, 1087, which stated: "[W]e disapprove of the elaborate arising-out-of-use formula set forth in the court of appeal opinion in *** Baudin.*" Second, the *Carter* court, in striking down the complicated formula relied upon in *Duvigneaud*, analyzed the "arising-out-of-use" issue in two steps: (1) was the conduct of which the plaintiff complained a legal cause of the injury? (2) was such conduct a use of the

automobile? (*Carter*, 423 So. 2d at 1087.) Applying the analysis used by the Louisiana Supreme Court in *Carter* results in a determination that the facts between *Duvigneaud* and this case are easily distinguishable: in *Duvigneaud*, the dog was *contained in a car* and got out by accident; in the instant case, the dog was *controlled by a leash* and got loose by accident.

A careful reading of *Woodside* (130 Ill. App. 3d 501, 474 N.E.2d 771) discloses that the Illinois Appellate Court performed a similar inquiry. In *Woodside*, the defendant Gerken Food Co. delivered two 100-pound sacks of potatoes to the cafe where the plaintiff Woodside was employed as head cook. Despite specific instructions from Woodside to Gerken's deliverymen that all potato deliveries be stowed at the inside back wall of the walk-in cooler, one delivery man left the sacks in the doorway of the cooler. Woodside attempted to move the sacks herself and sustained injuries to her back. The issue before the court was whether Woodside's attempt to move the potatoes in the walk-in cooler constituted "unloading" within the meaning of the subject insurance policy. The court determined that the law in Illinois regarding "loading and unloading cases" was the "completed operations" doctrine, *i.e.*, loading or unloading is complete once "the deliverer [has] finished his handling of the material, and [it has] been placed in the hands of the receiver at the designated reception point." (*Woodside*, 130 Ill. App. at 506, 474 N.E.2d at 774.) It held that the delivery at issue did not satisfy the second requirement and was thus incomplete. Woodside's attempt to move the potatoes herself constituted completion of the delivery and therefore a use of the insured vehicle within the meaning of the subject insurance policy. (130 Ill. App. at 506-07, 474 N.E.2d at 774-75.) This conclusion answers the second step of the *Carter* inquiry: Whether the conduct complained of constituted a "use" of the insured vehicle.

Turning to the question of causation (whether the conduct was a legal cause of the injury), the *Woodside* court said:

"What is determinative [of causation] is whether the accident in question arose out of the defective delivery or would not have occurred but for that defective delivery ***.

The facts of the instant case reveal that the insured delivered two sacks of potatoes to the Hy-Ho Cafe. The Gerken employee placed the sacks in the doorway of the walk-in storage cooler, thereby impeding entry and exit. Thus, further movement of the potatoes was rendered necessary by the as yet incompleted delivery. When Woodside had cause to obtain supplies from the cooler, she attempted to move the potatoes

to the rear of the cooler. It was during this attempt that Woodside sustained her injuries.

\*\*\* [I]t is apparent that Woodside's injuries would not have occurred but for the defective delivery of the insured. Gerken deliverymen had been explicitly instructed to place the potatoes within the cooler to the rear, not in its entrance. Had those instructions been followed, this court would not have had reason to resolve this dispute, for Woodside would not have had to move the potatoes in the first place." 130 Ill. App. 3d at 507, 474 N.E.2d at 775.

■ Returning to the facts of the instant case, if plaintiffs contend that Steven Scheeler's act of unloading his automobile was a cause, we determine such conduct was *not* a cause of Stuens' injuries as it was only remotely connected to the collision. It did not constitute either "use" or "ownership, maintenance or use" of the uninsured vehicle within the meaning of the defendants' uninsured motorist clauses. If, on the other hand, plaintiffs contend the crucial act was Scheeler's letting go of the dog's leash, we determine such conduct *was* a cause leading to the collision and subsequent injuries. Such conduct was not, however, a "use" *et cetera* of the uninsured vehicle by any stretch of this court's imagination. Regardless of the approach taken by plaintiffs to establish insurance coverage, the circuit court properly denied the plaintiffs' motion for summary judgment and granted defendants' motions for summary judgment.

The judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

WOODWARD and LINDBERG, JJ., concur.